Revised 7/2018

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

In re:  MARSHALL FRANKLIN FISHER

Case No. *14-44913*

Chapter *13*

## APPLICATION FOR PAYMENT FROM UNCLAIMED FUNDS

COURT JUDGMENTS ENFORCEMENT Co.

The undersigned, *Thomas F. Maher, Jba*, applies to the Bankruptcy Court for the Eastern District of Michigan for entry of an order directing the Clerk of Court to remit to the applicant the sum of $_____, said funds having been deposited into the Treasury of the United States pursuant to an order of the court as unclaimed fund for

_____.

The applicant further states that:

1.  (Indicate one of the following)

    _____ Applicant is the party requesting payment of the unclaimed fund named above and states that no other application for this unclaimed fund has been submitted by or at the request of the claimant.

    _____ Applicant is the duly authorized representative for the business or corporation named above as the claimant. Applicant has reviewed all records of the claimant and states that no other application for this claim has been submitted by or at the request of this claimant. An Affidavit of Claimant is attached and made part of this application.

    _____ Applicant is either a family member of the deceased claimant or a successor in interest to the individual or business named as the claimant. An original "power of attorney" conforming to the official Bankruptcy Form and/or other supporting documents which indicated the applicant's entitlement to this claim is attached and made part of this application.

FILED '23 JAN 17 PM3:35
US BANKRUPTCY MIE-FLINT

2. Applicant has made sufficient inquiry and has no knowledge that this claim has been previously paid, that any other application for this claim is currently pending before this court, or that any party other than the applicant is entitled to submit an application for this claim.

Application for Payment of Unclaimed Funds

Respectfully submitted this _17_ day of _JANUARY_ 20_23_

_Thomas F. MAHER_
Name of Applicant

_Thomas F. Maher_
Signature of Applicant

_OWNER_
Name and Title of Applicant

_COURT JUDGMENTS_
Company Name _EFORCEMENT CO._
_PO. BOX 321_
_250 E. BOULEVARD DR_
Street Address

_FLINT, MI 48502_
City and State

_810. 691. 4337_
Telephone number

_SOCIAL SECURITY NUMBER_
Tax Identification

XXX-XX-_9205_
Last 4 digits of Social Security Number

_____
Claim Number, if applicable

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re:

MARSHALL FRANKLIN FISHER

Case No. _14-44913_
Chapter _13_

## ORDER FOR PAYMENT OF UNCLAIMED FUNDS

Upon application and in accordance with the provisions of 28 U.S.C. Section 2042, that following a review of the sufficiency of the Affidavit of Claimant information that the claimant is properly entitled to said funds, and that the U.S. Attorney for the Eastern District of Michigan was provided a copy of this application with a proof of service attached to the application,

**IT IS ORDERED** that the Clerk of the U.S. Bankruptcy Court remit to

COURT JUDGMENTS ENFORCEMENT COMPANY

the sum of _FIVE THOUSAND TWO HUNDRED NINETY ONE_ dollars ($ _5291-52_)

of unclaimed funds held in the U.S. Treasury.

_____
United States Bankruptcy Judge

Dated: _____

UNITED STATE BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re: *MARSHALL*
       *FRANKLIN*
              *FISHER*

Case No. *14-4449B*

Chapter *13*

## AFFIDAVIT OF CLAIMANT

I, *Thomas F. MAHER dBA Court Judgments Enforcement Co*, do hereby state
that I am the claimant to the unclaimed funds released in this application and that I am,
to the best of my knowledge, the legal owner of these funds.

Mailing address: *P.O. Box 321*

*250 E. Boulevard Dr.*

*FLINT, MICHIGAN, 48502*

Phone number: *810 · 691 · 4337*

Social security number **XXX-XX-** *9205*  **Last 4 digits**

If claimant is a corporation, the federal tax ID number *NA*

1.  Claimant History: Substantiate claimant's right to the claim; i.e. if the
payment is to an individual, include a copy of driver's license or state identification
card. If a corporation, include purchase agreements regarding the right to ownership.
Attached are certified copies of all necessary documentation.

2. I (or the company which I represent) neither have previously received
remittance for this claim nor contracted with any other party other than the
person

Affidavit of Claimant

I declare under penalty of perjury that the foregoing copy is true and correct.

Dated: 1/17/2023

_____
Signature of Claimant

Sworn to and Subscribed before me this
17 day of JANUARY 20 23

_____
NOTARY PUBLIC AT LARGE
STATE OF MICHIGAN
COUNTY. GENESEE

THOMAS F. MAHER
Notary Public – State of Michigan
County of Genesee
My Commission Expires Nov. 10, 2026
Acting in the County of GENESEE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re:

MARSHALL
     FRANKLIN
          FISHER

Case No. _14 - 44913_

Chapter _13_

## PROOF OF SERVICE

I, the undersigned, hereby certify that on the __17__ day of __JANUARY__,

20_23_, a copy of the Application for Payment From Unclaimed Funds by _____

_Thomas F. MAHER, dBA Court Judgments Enforcement Co._ was served on the

United States Attorney for the Eastern District of Michigan at the following address:

U.S. Attorney Office, Federal Building
Attn: Civil Division - Financial Litigation
600 Church Street
Flint, MI 48502

Dated: _JANUARY 17, 2023_

By: _Thomas F. Maher_
_Thomas F. MAHER_

United States Bankruptcy Court
Eastern District of Michigan

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was
filed under Chapter 13 of the United States Bankruptcy Code,
entered on 03/24/2014 at 5:28 PM and filed on 03/24/2014.



**Marshall Franklin Fisher**
29237 Spring Hill Drive
Southfield, MI 48076
SSN / ITIN: xxx-xx-8205

The case was filed by the debtor's attorney:          The bankruptcy trustee is:

**Jeffrey K. Thomas (SUSPENDED)**          **Krispen S. Carroll**
2550 Telegraph Rd.                                           719 Griswold
Suite 110                                                           Suite 1100
Bloomfield Hills, MI 48302                              Detroit, MI 48226
(877) 242-8300                                                   (313) 962-5035

The case was assigned case number 14-44913-mar to Judge Mark A. Randon.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at
all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights
in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our
*Internet* home page http://www.mieb.uscourts.gov or at the Clerk's Office, 211 West Fort Street, Detroit, MI 48226.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**Todd M. Stickle**
**Clerk, U.S. Bankruptcy Court**

| PACER Service Center |  |  |
|---|---|---|
| **Transaction Receipt** |  |  |
| 10/31/2022 14:08:59 |  |  |
| **PACER Login:** | tfmaher1951 | **Client Code:** |

/6℃

https://ecf.mieb.uscourts.gov/cgi-bin/NoticeOfFiling.pl?7784379

## <u>COVER LETTER AND EXPLANATION</u>

**EASTERN DISTRICT OF MICHIGAN – United States Bankruptcy Court**
**ASSIGNMENT OF BANKRUPTCY DISTRIBUTION 'UNCLAIMED FUNDS' OWED TO A DEBTOR/CREDITOR**

**File Number:**    **14-44913 - mar**
**Debtor/Creditor:**   **Marshall Franklin Fisher (deceased 08.05.2016 with enclosed death certificate)**
**Recently designated & contracted as new Assignee-Payee: Court Judgments Enforcement Company**
**(assigned to us by the debtor/creditor's only heir & son, Matthew Fisher)**

**Unclaimed Funds To Be Released: Five thousand two hundred ninety one dollars and 52/100 ($5,291.52)**

**December** *12* **2022**

---

**Dear United States Bankruptcy Court – Eastern District of Michigan**

Per the enclosed completed 'assignment for valuable consideration and other services', please issue the released funds check made <u>payable to:</u>    "Court Judgments Enforcement Company", a Genesee county registered dba owned by Thomas F Maher.

Current court PACER online records appear to show that Unclaimed Funds amount are: $5,291.52

Per the enclosed 'Request for Payee Information & TIN Certification', please mail the due funds check to: Court Judgments Enforcement Company, PO Box 321, 250 E Boulevard Drive, Flint, MI 48502.

Please find <u>enclosed the original</u> completed and executed contract form titled "Assignment Of Bankruptcy Distribution Owed to Creditor" that my company uses.

These funds have been owed to this debtor/creditor but never distributed, and has now been duly assigned for valuable services and consideration to Court Judgment Enforcement Co. as of _12/12/2022_.

THE CLIENT WAS NOT ONLY ADVISED THAT THEY MAY SEEK THE ADVICE OF AN INDEPENDENT LAWYER OF THE CLIENTS CHOICE BEFORE SIGNING THE ASSIGNMENT FORM, BUT WAS ALSO ENCOURAGED TO DO SO.

Thank you for your help and consideration! Please call with any questions, and best regards.

_____
**Thomas F Maher    Owner – Michigan Notary Public**

# COURT JUDGMENTS ENFORCEMENT CO.

**Thomas F Maher - Asset Recovery Specialist**
**PO Box 321**
**Flint, Michigan 48501**
**cell phone - 810.691.4337**
**email - ceo.tfm@gmail.com**

## Dear United States Bankruptcy Court
## Eastern District of Michigan

RE:   Debtor & Creditor:        **Marshall Franklin Fisher**
Chapter 13 Bankruptcy case #

December   12 , 2022

Under penalty of perjury, I do solemnly swear and attest the following statements:

I ask the Eastern District of Michigan – United States Bankruptcy Court to release the cash money being held as '**UNCLAIMED FUNDS**' by the court for the benefit of Marshall Franklin Fisher.  This money is due from my father's Chapter 13 bankruptcy case entered on 03/24/2014 and filed 03/24/2014. Marshall Franklin Fisher is listed as both the debtor, and the creditor owed this amount. My father died intestate on 08.05.2016 and I am his only legal heir.

Enclosed please find:

The original signed agreement for valuable consideration and other services I entered into with Court Judgments Enforcement Company assigning these funds on my/our behalf. Court Judgment Enforcement Company will deliver to me my contracted & agreed upon contingency split share.

A copy of my valid Michigan driver's license, given as proof of identity and easy signature comparison, and thus request there be no need for notarization on this or any other form.

I am requesting that you please send the funds payable directly to Court Judgment Enforcement Company at their address:

**Court Judgments Enforcement Company**
**PO Box 321**
**250 E. Boulevard Drive**
**Flint, Michigan  48502**

Best regards,

**MATTHEW FISHER**
**20919 ALEXANDER STREET**
**ST. CLAIR SHORES, MI  48081**
**TELEPHONE NUMBER:  248.924.8875**





UNITED STATES OF AMERICA

TYPE/PRINT IN PERMANENT BLACK INK

LF
CF **2549**

STATE OF MICHIGAN
DEPARTMENT OF COMMUNITY HEALTH
**CERTIFICATE OF DEATH**

STATE FILE NUMBER
**3800131**

Fisher, Marshall. NAMES OF DECEDENT - For use by physician or institution

| **DECEDENT** | 1. DECEDENT'S NAME (First, Middle, Last) Marshall F Fisher | 2. DATE OF BIRTH (Month, Day, Year) May 21, 1941 | 3. SEX Male | 4. DATE OF DEATH (Month, Day, Year) August 5, 2016 |
|---|---|---|---|---|

5. NAME AT BIRTH OR OTHER NAME USED FOR PERSONAL BUSINESS (include AKA's if any)

| 6a. AGE - Last Birthday (Years) 75 | 6b. UNDER 1 YEAR MONTHS / DAYS | 6c. UNDER 1 DAY HOURS / MINUTES |
|---|---|---|

| 7a. LOCATION OF DEATH (Enter place officially pronounced dead in 7a, 7b, 7c) HOSPITAL OR OTHER INSTITUTION - Name (if not in either, give street and number and zip code) 30119 North Park Drive #203      48047 | 7b. CITY, VILLAGE, OR TOWNSHIP OF DEATH New Baltimore | 7c. COUNTY OF DEATH Macomb |
|---|---|---|

| 8a. CURRENT RESIDENCE - STATE Michigan | 8b. COUNTY Macomb | 8c. LOCALITY (check the box that describes the location) ☑ CITY OR VILLAGE (inside limit of) New Baltimore ☐ TOWNSHIP ☐ UNINCORPORATED PLACE | 8d. STREET AND NUMBER (include Apt. No. if applicable) 30119 North Park Dr. #203 |
|---|---|---|---|

| 8e. ZIP CODE 48047 | 9. BIRTHPLACE (City and State or Country) Detroit, Michigan | 10. SOCIAL SECURITY NUMBER 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 | 11. DECEDENT'S EDUCATION - What is the highest degree or level of school completed at the time of death? Bachelors Degree |
|---|---|---|---|

| 12. RACE - American Indian, White, Black, etc. (if Asian, give nationality, i.e. Chinese, Filipino, Asian Indian, etc.) (Enter all that apply) White | 13. ANCESTRY - Mexican, Cuban, Arab, African, English, French, Dutch, etc. (Enter all that apply) If American Indian race, enter principal tribe Lithuanian/American | 13b. HISPANIC ORIGIN (Yes or No) | 14. WAS DECEDENT EVER IN THE U.S. ARMED FORCES? (yes or no) Yes  No |
|---|---|---|---|

| 15. USUAL OCCUPATION (Give kind of work done during most of working life. Do not use retired.) Senior Accountant | 16. KIND OF BUSINESS OR INDUSTRY City Government | 17. MARITAL STATUS - Married, Never Married, Widowed, Divorced (Specify) Married | 18. NAME OF SURVIVING SPOUSE (if wife, give name before first marriage) Vickie Jones |
|---|---|---|---|

**PARENTS**

| 19. FATHER'S NAME (First, Middle, Last) Sherman Fisher | 20. MOTHER'S NAME BEFORE FIRST MARRIED (First, Middle, Last) Helen Weiner |
|---|---|

**INFORMANT**

| 21a. INFORMANT'S NAME (Type/Print) Matthew Fisher | 21b. RELATIONSHIP TO DECEDENT Son | 21c. MAILING ADDRESS (Street and Number or Rural Route Number, City or Village, State, Zip Code) 30119 North Park Dr. #203, New Baltimore, MI   48047 |
|---|---|---|

**DISPOSITION**

| 22. METHOD OF DISPOSITION Burial, Cremation, Entombment, Donation, Removal, Storage (Specify) Burial | 23a. PLACE OF DISPOSITION (Name of Cemetery, Crematory, or other location) Machpelah Cemetery | 23b. LOCATION - City or Village, State Ferndale, Michigan |
|---|---|---|

| 24. SIGNATURE OF MORTUARY SCIENCE LICENSEE *Edward W. Dehner* | 25. LICENSE NUMBER (of Licensee) 5444 | 26. NAME AND ADDRESS OF FUNERAL FACILITY The Ira Kaufman Chapel, Inc. 18325 W 9 Mile, Southfield, Michigan 48075 |
|---|---|---|

**CERTIFICATION**

| 27a. CERTIFIER (Check only one) ☑ Certifying Physician - To the best of my knowledge, death occurred due to the cause(s) and manner stated. ☐ Medical Examiner - On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated. Signature and Title *Killum MD* | 28a. ACTUAL OR PRESUMED TIME OF DEATH 1527   M | 28b. PRONOUNCED DEAD ON (Mo. Day Yr) Aug 5 2016 | 28c. TIME PRONOUNCED DEAD 1609   M |
|---|---|---|---|

| 27b. DATE SIGNED (Mo. Day, Yr) Aug 8 2016 | 27c. LICENSE NUMBER 4301056249 | 29. MEDICAL EXAMINER CONTACTED? (Yes or No) yes | 30. PLACE OF DEATH (Home, Hospice, Nursing Home, Hospital, Ambulatory, Emergency Room, DOA (Specify) home | 31. IF HOSPITAL: Inpatient, Outpatient, Emergency Room, DOA (Specify) |
|---|---|---|---|---|

| 32. MEDICAL EXAMINER'S CASE NUMBER (if applicable) 16-1347 | 33. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print) Dr Mohammed Al Ali |
|---|---|

| 34. NAME AND ADDRESS OF CERTIFYING PHYSICIAN (Type or Print) Kimberly A Zielke MD 33464 Schoenherr Rd St 140 Sterling Hts 48312 |
|---|

| 35a. REGISTRAR'S SIGNATURE *Carmella Sabaugh* | 35b. DATE FILED (Month, Day, Year) AUG 15 2016 |
|---|---|

**CAUSE OF DEATH**

| 36. PART I. Enter the chain of events - disease, injuries, or complications - that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. Enter only one cause on a line. | | Approximate Interval Between Onset and Death |
|---|---|---|
| a. Carcinoma of paranasal sinus | | months |
| DUE TO (OR AS A CONSEQUENCE OF) | | |
| b. | | |
| DUE TO (OR AS A CONSEQUENCE OF) | | |
| c. | | |

Sequentially list conditions, IF ANY, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST

| 37. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes  ☐ Probably ☐ No  ☑ Unknown | 38. IF FEMALE: ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within the past year |
|---|---|

PART II. OTHER SIGNIFICANT CONDITIONS contributing to death but not resulting in the underlying cause given in Part I.
hypertension

| 39. MANNER OF DEATH - Accident, Suicide, Homicide, Natural, Indeterminate or Pending (Specify) natural | 40a. WAS AN AUTOPSY PERFORMED? (Yes or No) No | 40b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH (Yes or No) |
|---|---|---|

**MEDICAL EXAMINER**

| 41a. DATE OF INJURY (Mo, Day, Yr) | 41b. TIME OF INJURY   M | 41c. DESCRIBE HOW INJURY OCCURRED |
|---|---|---|

| 41d. INJURY AT WORK (Yes or No) | 41e. PLACE OF INJURY - At home, farm, street, construction site, wooded area, etc. (Specify) | 41f. IF TRANSPORTATION INJURY - (Specify) ☐ Driver/Operator ☐ Passenger, Pedestrian, etc. (Specify) | 41g. LOCATION - Street or RFD No.   City, Village or Twp.   State |
|---|---|---|---|

DCH-0463 (Rev 9/15/09)

Printed On 08-15-2016 at 14:34:12

*THIS CERTIFIES THAT the above is a true copy of the facts recorded on the certificate of the person named hereon, as filed in the MACOMB COUNTY CLERK'S OFFICE.*

*Carmella Sabaugh*
County Clerk and Register of Deeds

00843834

WARNING: THIS DOCUMENT IS PRINTED ON SECURITY WATERMARKED PAPER AND CONTAINS SECURITY FIBERS. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK. THIS DOCUMENT CONTAINS A SECURITY BACKGROUND, EMBOSSED SEALS AND THERMOCHROMIC INK.

VOID WITHOUT WATERMARK OR IF ALTERED OR ERASED

# GENERAL DURABLE POWER OF ATTORNEY OF MARSHALL FRANKLIN FISHER

### 1. DATED: JUNE 29, 2016

### 2. Principal.

MARSHALL FRANKLIN FISHER, residing at 29237 Spring Hill Dr., Southfield MI 48076

### 3. Agent (Attorney-in-Fact).

MATTHEW FISHER residing at 30119 North Park Dr., Apt 203, New Baltimore, MI 48047.

### 4. Successor Agent.
At this time I have not named a successor agent, which I may amend at a later.

In the event that I do name a successor agent, any person may rely upon any act done by such successor Agent and shall not be required to inquire into whether the original or predecessor Attorney-in-Fact is dead, disabled or absent from the state of Michigan (or the state of my domicile), as the case may be.

### 5. *REVOCATION PRIOR POWERS OF ATTORNEY*

By Executing this General Durable Power of Attorney I hereby expressly revoke any and all prior Powers of Attorney except my existing Medical Durable Power of Attorney and terminate the authority granted to any and all attorneys-in-fact under prior documents except my existing Medical Durable Power of Attorney. I hereby declare this document to be my only valid General Durable Power of Attorney until such time as I amend or revoke it.

**6. Disability of Principal.** Not Applicable


INTENTIONALLY LEFT BLANK


**7. General Grant of Power.** To exercise or perform any act, power, duty, right or obligation whatsoever that I now or may hereafter acquire, relating to any person, matter, transaction or property, real or personal, tangible or intangible, now owned or hereafter acquired by me, including, without limitation, the following specifically enumerated powers. I grant to my Agent full power and authority to do everything necessary in exercising any of the powers herein granted as fully as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my Agent shall lawfully do or cause to be done by virtue of this Power of Attorney and the powers herein granted.

**8. Collection Powers.** To forgive, request, demand, sue for, recover, collect, receive, hold all such sums of money debts, dues, commercial paper, checks, drafts, accounts, deposits, legacies, bequests, devises, notes, interests, stock certificates, bonds, dividends, certificates of deposit, annuities, pension, profit sharing, retirement, social security, insurance and other contractual benefits and proceeds, all documents of title, all property, real or personal, intangible or tangible and all property rights and demands whatsoever, liquidated or unliquidated, now or hereafter owned by, or due, owing, payable or belonging to, me or in which I have or may hereafter acquire an interest; to have, use, and take all lawful means and equitable and legal remedies and

proceedings in my name for the collection and recovery thereof, and to adjust, sell, compromise, and agree for the same, and to execute and deliver for me, on my behalf and in my name, all endorsements, releases, receipts, or other sufficient discharges for the same.

9. **Real Property Powers.** To bargain, contract, agree for, option, purchase, acquire, receive, improve, maintain, repair, insure, plat, partition, safeguard, lease, demise, grant, bargain, sell, assign, transfer, remise, release, exchange, convey, mortgage and hypothecate real estate and any interests therein (including any interest which I hold with any other person as joint tenants with full rights of survivorship, or as tenants by the entireties), lands, tenements and hereditaments, for such price, upon such terms and conditions, as my said Agent shall determine.

It is my preference and intention to dwell in my home as long as possible. In the event that I am admitted to a care facility, including a nursing home or other assisted living facility, it shall always be my intention to return to my home and occupy it as my primary residence. My Agent shall have discretion to maintain my home for me in order to permit me to return to my home in the event I am admitted to a care facility of any kind, even though it may be considered a imprudent investment. In addition, my Agent may obtain loans for expenses in preservation and maintenance of the property in the event I have insufficient income and assets to pay for such expenses.

This shall include legal description and land described in Schedule 1 and any real estate that I shall purchase after the date of this agreement, which shall be described in a schedule attached to this agreement. I may update this list of my real estate periodically by attaching a schedule, signed by me or by my Agent and attaching it to this General Durable Power of Attorney.

10. **Personal Property Powers.** To bargain, contract, agree for, purchase, option, acquire, receive, improve, maintain, repair, insure, safeguard, lease, assign, sell, exchange, redeem, transfer, mortgage, hypothecate and in any and every way and manner deal in and with goods, wares, merchandise, furniture and furnishings, automobiles, watercraft, aircraft, bills, notes, debentures, bonds, stocks, limited partnership interests, certificates of deposits, commercial paper, money market instruments, and other securities, choses in action and other tangible or intangible personal property in possession or in action, for such price, upon such terms and conditions, as my said Agent shall determine.

11. **Contract Powers.** To make, do, and transact every kind of business of whatever nature, and also for me and in my name, and as my act and deed, to sign, seal, execute, deliver and acknowledge such stock certificates, stock powers, assignments separate from certificate, deeds, conveyances, leases and assignments of leases, covenants, indentures, options, letters of intent, contracts, agreements, closing agreements, certificates, mortgages, hypothecations, bills of lading, bills, bonds, debentures, notes, receipts, evidences of debts, releases and satisfaction of mortgage,

judgments and other debts, waivers of statutes of limitation, and such other documents and instruments in writing of whatever kind and nature as may be necessary or proper in the premises, as fully as I might do if done in my own capacity.

12. **Payments for Care Assistance in Home.** I intend to remain in my own home, despite any worsening medical condition. Should I need assistance with day to day tasks or direct care, I authorize my Agent to use my income and savings to pay for home services or care, whether provided by family members, friends or others in the business of providing such services. Should any agent, family member, or any other friend provide care or services for me in my, her or his home when I am in need of help, then my agent shall compensate that agent, family member or friend as follows:

(a) If the family member or other person resigns from or takes a leave of absence from paid employment in order to care for me, that person shall be compensated at not less than the amount that he or she would have been paid at the job which he or she has left or from which he or she has taken a leave of absence. I intend that the employed care giver be fully reimbursed for loss of income or benefits.

(b) If the family member of other person is unemployed while providing care, or is employed but spends free time helping me, he or she shall be compensated at the then current fair market rate for the in-home services being provided.

The type of services which I understand can keep me in my home despite a deteriorating medical condition include: home and yard maintenance, house cleaning, laundry, shopping, food preparation, security services, telephone call-in service, in-home personal care (such as bathing or medication management), taxi/transportation service, companion care and nursing care. These service all have value to me, although I understand that certain services would cost more on the open market. I direct my Agent to arrange for reasonable compensation to any person, including the agent, who provides these services to help me stay in my home.

I direct that my Agent reflect this caregiving arrangement in writing in the form of a caregiving contract which allows any and all persons conducting such caregiving to act "at-will" with no obligation for life care arrangements. In addition, I direct that my Agent make payment for services at the time they are rendered to avoid implications of divestment under Michigan Bridges Eligibility Manual Item 405 or the equivalent state and federal regulations then in existence for Medicaid at that time.

To the extent my Agent is involved personally as a caregiver, and receives payment or benefit, my Agent shall defer decisions regarding payment to a person having a substantial interest in the property subject to this payment, which is adverse to the exercise of this payment power in favor of Agent.

13. **Banking Powers.** To terminate and close any accounts of whatsoever type which I may have in my sole name or in joint name with any other person(s) in any bank or financial institution; to open any accounts of whatsoever type, in my sole name or in joint name with any other person(s) in any bank or financial institution; to make, draw, sign in my name, deliver and accept checks, drafts, receipts for moneys, notes or other orders for the payment of money against, or otherwise make withdrawals from any commercial, checking or savings accounts or any other accounts of whatsoever type which I may have in my sole name or in joint name with other person(s), in any bank or financial institution, for any purpose which my said Agent may think necessary, advisable or proper; and to endorse and negotiate in my name and deliver checks, drafts, notes, bills, certificates of deposit, commercial paper, money market instruments, bills of exchange or other instruments for the payment of money and to deposit same, as cash or for collection, and cash into any commercial, checking or savings account which I may have in my sole name or in joint name with any other person(s), in any bank or financial institution; and to carry on all my ordinary banking business.

14. **Deal With Tax Authorities.** To execute and sign on my behalf any and all federal, state and local income (including federal and state estimated and state interest, dividends and gains) and gift tax returns for all periods between the years 1986 and 2025 and to pay any tax due thereon; to represent me or to sign an Internal Revenue Service Form 2848 ("Power of Attorney and Declaration of Representative") or 8821 ("Tax Information Authorization"), or comparable authorization, appointing a qualified lawyer, certified public accountant or enrolled agent (including my Agent if my Agent is qualified as such a lawyer, accountant or agent) to represent me before any office of the Internal Revenue Service or any state, local or foreign taxing authority with respect to the types of taxes and years referred to in this Paragraph, and to specify on said authorization said types of taxes and years; to receive from, or inspect confidential information in any office of, the Internal Revenue Service or state, local or foreign tax authority; and to perform on my behalf the following acts with respect to any federal, state, local and foreign taxes: objections, protests, claims for abatement, refund or credit in relation to any such tax proposed, levied or paid; to represent me and to institute and prosecute proceedings in court or before any administrative authority to contest any such tax in whole or in part or for recovery of any amount paid in respect of any such tax, to defend or settle any amount paid in respect of any such tax, to give full and final receipt for any refund or credit and to endorse and collect any check or other voucher therefore; to receive and deposit, in any one of my bank accounts, or those of any revocable trust of mine, checks in payment of any refund of federal, state, local and foreign taxes, penalties and interest; to pay by check drawn on a bank account of mine or any revocable trust of mine any such tax, interest and penalty, and I direct all banks in which I or any revocable trust of mine, have accounts to permit my Agent to draw checks for payment of said items and to honor said checks; to execute waivers (including offers of waivers) of restrictions on assessment or collection of deficiencies in tax and waivers of notice of disallowance of a claim for credit or refund; to execute consents

extending the statutory period for assessment or collection of any such taxes; to execute offers in compromise; to execute closing agreements under Section 7121 or comparable provisions of the federal Internal Revenue Code or any state, local or foreign tax statutes or regulations; to delegate authority or to substitute another representative for any one previously appointed by me or my Agent; and to receive copies of all notices and other written communications involving my federal, state, local or foreign taxes at the home or office address of my Agent. I waive any privileges I may have against disclosure of any confidential tax information to my Agent.

If I am married, to signify, as may be required under Section 2513 of the United States Internal Revenue Code of 1986, as amended, or any corresponding section of any future United States law, my consent to having one-half (1/2) of any gift(s) made by my spouse considered as made by me.

This General Durable Power of Attorney shall be deemed to apply to all of the following types of taxes: all foreign taxes, federal income, generation skipping (and allocation of my generation skipping tax exemption) and gift taxes, and state and local income, intangibles, gift, and generation skipping (and allocation of my generation skipping tax exemption), due, reportable, or payable; and all returns to be filed.

15. **Safe Deposit Box.** To have access to any safe deposit box of which I am a tenant or co-tenant with full power to withdraw or change from time to time the contents thereof; and to exchange or surrender the box and keys thereto, renew any rental contract therefore, and to do all things which any depository, association or bank or its agents may require, hereby releasing the lessor from all liability in connection therewith.

16. **Employ Agents.** To employ and compensate persons, even if they are associated with my Agent, to advise or assist my Agent in the performance of the duties of this office. I waive any attorney-client privilege, accountant-client privilege and any other common law or statutory privileges I may have against disclosure of any confidential information to my Agent in the furtherance of the Agent's duties under this Durable Power of Attorney.

17. **Motor Vehicles.** To apply for a certificate of title upon, and endorse and transfer title thereto, for any automobile, or other motor vehicle, and to represent in such transfer assignment that the title to said motor vehicle is free and clear of all liens and encumbrances except those specifically set forth in such transfer assignment.

18. **Settlement Powers.** To adjust, settle, compromise or submit to arbitration any accounts, debts, claims, demands, disputes or matters which are now subsisting or may hereafter arise between me or my said Agent and any other person or persons, or

in which any property, right, title, interest or estate belonging to or claimed by me may be concerned.

19. **Legal Actions.** To commence, prosecute, enforce or abandon, or to defend, answer, oppose, confess, compromise or settle all claims, suits, actions, or other judicial or administrative proceedings in which I am or may hereafter be interested, or in which any property, right, title, interest or estate belonging to, coming to or claimed by me may be concerned. To sue or take other appropriate legal action against any person, entity or other third party for damages, including punitive damages, for refusal to (i) honor this Durable Power of Attorney and (ii) comply with the directions of my Agent hereunder and the actions I have authorized my Agent to take.

20. **Dividends.** To receive all dividends which are or shall be payable on any and all shares of stock in any corporation which I may be, in equity or otherwise, beneficially entitled; or to elect to reinvest such dividend, all as my agent may deem appropriate.

21. **Vote Stock.** To vote at all stockholder meetings of corporations and otherwise to act as my proxy or representative in respect of any shares now held or which may hereafter be acquired by me therein and for that purpose to sign and execute any proxies or other instruments in my name and on my behalf.

22. **Rights as to Securities.** To sell, assign, transfer, and deliver all and any shares of stocks, bonds and other securities standing in my name on the books of any corporation, or to which I may be, in equity or otherwise, beneficially entitled, and for the purpose to make and execute all necessary acts of assignment and transfer.

23. **Insurance.** To apply for and own (on my behalf) any policies of insurance on my life, on any of my property, and against any liabilities or damages my Agent deems advisable, to pay any premiums or other charges required to maintain such policies, and to exercise any incident of ownership over such policies, (on my behalf), including (but not limited to) any right to change beneficiaries, cancel the policy, borrow against any cash value, or make any elections with respect to the policies. To redeem, surrender, borrow, extend, cancel, amend, pledge, alter or change, including change of beneficiary of any insurance policies in which I may have an interest, as my Agent may deem proper and expedient, and for such purpose to sign and execute any documents, affidavits or forms required in my name and on my behalf, except however, my Agent shall have no power and authority over life insurance policies I may own on my Agent's life.

24. **Social Security and Government Benefits.** To make application to any government agency for any benefit or government obligation to which I may be entitled; to endorse any checks or drafts made payable to me from any government agency for my benefit, including any Social Security checks.

25. **Business Interests.** To continue to conduct or participate in any business in which I may be engaged or to carry out, modify or amend any agreement to which I may be a party, and to sell, exchange, modify or terminate such interest to or with such person or persons as my Agent may deem proper and on such terms and with such security as my Agent may deem appropriate; execute partnership agreements, and amendments thereto; incorporate, reorganize, merge, consolidate, recapitalize, sell, liquidate or dissolve any business; elect or employ officers, directors and agents; carry out the provisions of any agreement for the sale of any business interest or the stock therein.

26. **Borrow.** To borrow from time to time such sums of money and upon such terms as my said Agent may think expedient for or in relation to any purpose or object which my Agent may deem proper or expedient, unsecured or upon the security of any of my property, whether real or personal or otherwise, and for such purpose to give, execute in my name, deliver, and acknowledge promissory notes and/or renewals thereof, mortgages, pledges and guaranties with such powers and provisions as my Agent may think proper or requisite.

27. **Debts and Expenses.** To pay, compromise, and settle any and all bills, loans, notes or other forms of indebtedness owed by me at the present time, or which may be owed by me or incurred by my Agent hereunder for my benefit at any time in the future, and to incur and pay from any of my assets or property all reasonable expenses in connection with the control, management, and supervision of my property and the maintenance, support, care, and comfort of myself and those dependent upon me, including reasonable compensation for the services of my Agent, and including the fees and charges of such agents, attorneys, accountants or others as my Agent may, in the exercise of discretion, employ in the management of any of my affairs.

28. **Investments.** To invest and reinvest in loans, stocks, bonds, including United States bonds purchased at a discount but redeemable at face value, securities, real estate, life insurance, annuities or endowment policies or combinations thereof, or in any other investment which my Agent may deem proper; to reduce the interest rate at any time and from time to time on any mortgage or land contract; to deal with and give instructions to any brokerage firm with respect to the purchase, sale or other disposition of securities and other assets, add assets to or withdraw assets from any account in my name, and sign any representation, certification or agreement, including agreements regarding margin, option trading, or commodities accounts, that my Agent deems advisable.

29. **Credit Cards and Charge Accounts.** To cancel or continue any of my credit cards, charge cards, automatic teller machine cards and/or charge accounts.

30. **Retirement Benefits.** To establish one or more "individual retirement accounts" or other retirement plans or arrangements in my name.

In connection with any pension, profit sharing or stock bonus plan, individual retirement arrangement, Roth IRA, §401(k) plan, §403(b) annuity or account, §457 plan, or any other retirement plan, arrangement or annuity in which I am a participant or of which I am a beneficiary (whether established by my Agent or otherwise) (each of which is hereinafter referred to as "such Plan"), my Agent shall have the following powers, in addition to all other applicable powers granted by this document.

(a) To make contributions or cause contributions to be made to such Plan with my funds or on my behalf or on behalf of my spouse.

(b) To receive and endorse checks or other distributions to me from such Plan, or to arrange for the direct deposit of the same in any account in my name or any trust created by me or for my benefit.

(c) To elect a form of payment of benefits from such Plan, and/or to withdraw benefits from such Plan, and/or to borrow from such Plan.

(d) To make, exercise, waiver or consent to any and all elections and/or options that I may have regarding any such Plan.

(e) To make, exercise, waive or consent to any and all elections and/or options that I may have as a beneficiary of any such Plan of my deceased Spouse.

(f) To waive any rights or benefits that I may have in any such Plan of my Spouse.

(g) To direct all investments in such Plans, including but not limited to investing or reinvesting in loans, stocks, bonds, securities, life insurance, annuities (including a Medicaid single premium immediate annuity) or combinations thereof, or in any other investment which my agent may deem proper.

(h) To consent to and comply with the terms of a Court Order directing the segregation or transfer of some or all of the assets in such Plan to my Spouse or to such Plan of my Spouse.

(*i*) To designate one or more beneficiaries or contingent beneficiaries for any benefits payable under such Plan due to my death, and to change any such prior designation of beneficiary made by me or by my Agent; provided, however, that my Agent (other than my spouse) shall have no power to designate my Agent directly or indirectly as a beneficiary or contingent beneficiary to receive a greater share or proportion of any such benefits than my Agent (other than my spouse) would have otherwise received unless such change is consented to by all other beneficiaries who would have received the benefits but for the proposed change. This limitation shall not apply to any designation of my Agent as beneficiary in a fiduciary capacity, with no beneficial interest.

31. **Third-Party Reliance.** Anyone who buys any of my property from my Agent is not obligated to see to the application of the purchase money or other consideration paid for such property. Third parties may rely upon the representation of my Agent as to all matters relating to any power granted to my Agent, and no person who may act in reliance upon the representations of my Agent or the authority granted to my Agent shall incur any liability to me or my estate as a result of permitting my Agent to exercise any power, and for the purpose of inducing third parties to rely on this power of attorney, I warrant that, if this power of attorney is revoked by me or otherwise terminated, I will indemnify and save such third party harmless from any loss suffered or liability incurred by such third party in good faith reliance on the authority of my Agent prior to such third party's actual knowledge of revocation or termination whether by operation of law or otherwise. This warranty shall bind my heirs, devisees and personal representatives.

32. **Damages for Refusal to Recognize Authority.** My Agent is authorized, at the expense of my estate, to seek interpretation and/or enforcement of any power granted to my Agent under this document from a court of competent jurisdiction. My Agent may seek any appropriate legal remedy including, but not limited to, declaratory judgments, temporary or permanent injunctions, and actual or punitive damages against any person or entity who unreasonably, negligently or willfully fails or refuses to follow my Agent's instructions with respect to a power granted to my Agent under this document.

33. **Protection for Agent.** No Agent named herein or substituted hereunder shall incur any liability to me for acting or refraining from acting hereunder, except for such Agent's own willful misconduct or gross negligence. My estate shall hold harmless and indemnify any Agent from all liability for acts done in good faith and for my benefit. This indemnity shall bind my heirs, devisees and personal representatives.

34. **Counterparts.** Any person may rely fully, completely, and equally on: (i) the original of this power of attorney, (ii) a duly executed counterpart of this power of attorney, or (iii) a copy certified by my Agent to be true copy of the original power of attorney.

35. **Photocopy/Certified Copies.** Any person may rely fully, completely, and equally on the original of this power of attorney, or on a certified copy of this power of attorney. My Agent or Successor Agent may create a certified copy of this power of attorney by executing a facsimile of the affidavit in **Appendix A** of this instrument, and attaching it to a photocopy of this power of attorney. Such certified copy shall conclusively constitute proof on which any person may rely that this power of attorney is, on the date such affidavit is executed, in full force and effect in all respects, that my Agent has no reason to believe that this power of attorney has been revoked, that my Agent has in any way been deprived of the authority granted to my

Agent in my behalf, or that I am no longer alive. In the event my primary Agent is no longer serving in that capacity, my Successor Agent may sign the affidavit creating a certified copy.

36. **Disability of Principal.** This power of attorney shall not be affected by my disability. The authority of my Agent shall be exercisable notwithstanding my later disability or incapacity or later uncertainty as to whether I am alive. Any act done by my Agent during any period of my disability or incompetency or during any period of uncertainty as to whether I am alive shall have the same effect as though I were alive, competent and not disabled, and shall inure to the benefit of and bind me, my heirs, devisees and personal representatives.

37. **Disability of Agent.** Whenever the word "incompetent" is used to describe an Agent, it shall be defined as follows:

   a. An individual shall be deemed incompetent if, in the opinion of two licensed physicians, that individual is unable to manage his or her property or financial affairs.

   b. An individual shall also be deemed incompetent if the individual has been deemed incompetent by the determination of a court of competent jurisdiction or has been found by a court unable to effectively manage his or her property or financial affairs.

   c. If an individual has been deemed incompetent, he or she shall be deemed to have regained competency if the basis for incompetency set forth in these paragraphs is no longer applicable. It is intended that it shall not be unreasonably difficult to obtain a recertification of an individual's competency as long as the determination of competency is made in the same fashion as the original determination of incompetency.

38. **Severability.** If any part of any provision of this instrument shall be invalid or unenforceable under applicable law, such part shall be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provision or the remaining provisions of this instrument.

39. **Gender and Tense.** Whenever the context of this power of attorney requires, the masculine gender includes the feminine or neuter, and vice versa, and the singular number includes the plural, and vice versa.

40. **Applicability to Foreign Jurisdictions.** To the extent permitted by law this power of attorney shall be applicable to all property of mine, real, personal, intangible or mixed, wherever and whatever state of the United States or foreign country the situs of such property is at any time located and whether such property is now owned by me or hereafter acquired by me or for me by my Agent.

41. **Interpretation and Governing Law.** The enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general powers herein granted to my Agent. Paragraph headings are for convenience only and are not to be deemed to be part of this instrument. This instrument is executed and delivered in the State of Michigan, and the laws of the state of Michigan shall govern all questions as to the validity of this power of attorney and the construction of its provisions.

42. **Arbitration.** If my agents cannot agree on a decision or action under this DPA, then the dispute shall be resolved by arbitration carried out under the rules of the Michigan Uniform Arbitration Act by a single arbiter, who shall be my attorney if he or she is available.

43. **Accounting.** Upon my request, or the guardian/conservator of my estate or the personal representative of my estate, the Agent shall account for all actions taken by the Agent for or on my behalf.

44. **Copies.** A copy of this Power of Attorney shall have the same effect and power as an original.

I have executed this General Durable Power of Attorney this 29th day of June, 2016.

/s/ _Marshall F. Fisher_
MARSHALL FRANKLIN FISHER

Witness
Dated: _6-29-16_

/s/ _____
Jeffrey K. Thomas, Esq.

State of Michigan County of Oakland } ss

On this 29TH day of June, 2016, before me, a Notary Public, personally appeared Marshall Franklin Fisher, who executed the above General Durable Power of Attorney, and acknowledged the same to be his free act and deed.

STATE OF MICHIGAN )
OAKLAND COUNTY )

> CORINA A WESTOVER
> Notary Public - Michigan
> Oakland County
> My Commission Expires Aug 26, 2019
> Acting in the County of Oakland

/s/ _Corina A. Westover_

My commission expires _August 26, 2019_

THIS INSTRUMENT PREPARED BY:
Jeffrey K. Thomas, Esq.
2550 Telegraph Rd., Suite 110
Bloomfield Hills, MI 48302
877-242-8300

### Acknowledgment of Duties Under a Durable Power of Attorney

I, Matthew Fisher, have been appointed as the attorney in fact for Marshall Franklin Fisher the principal, under a durable power of attorney dated June 29, 2016. By signing this document, I acknowledge that if and when I act as attorney in fact, all of the following apply:

1. Except as provided in the durable power of attorney, I must act in accordance with the standards of care applicable to fiduciaries acting under durable powers of attorney.

2. I must take reasonable steps to follow the instructions of Marshall Franklin Fisher.

3. On the request of Marshall Franklin Fisher, I must keep Marshall Franklin Fisher informed of my actions. I must provide an accounting to Marshall Franklin Fisher on the request of the principal, to a guardian or conservator appointed on behalf of Marshall Franklin Fisher on the request of that guardian or conservator, or pursuant to judicial order.

4. I cannot make a gift from Marshall Franklin Fisher's property, unless provided for in the durable power of attorney or by judicial order.

5. Unless provided in the durable power of attorney or by judicial order, I, while acting as attorney in fact, will not create an account or other asset in joint tenancy between the principal and me.

6. I must maintain records of my transactions as attorney in fact, including receipts, disbursements, and investments.

Dated: June 29, 2016

/s/ _____
Matthew Fisher

## LIVING WILL AND APPOINTMENT OF PATIENT ADVOCATE
## BY
## MARSHALL FRANKLIN FISHER

1. I, Marshall Franklin Fisher, designate my son, Matthew Fisher to exercise for me all rights and powers concerning my care, custody, and medical treatment that I could exercise if I were able to act for myself.

2. I intend this medical durable power of attorney to be a designation under MCL 700.5506–.5512 and a durable power of attorney under MCL 700.5501–.5502. As used in this medical durable power of attorney, the term *patient* refers to me, and the term *patient advocate* refers to the person designated to act for me in Paragraph 1 above. The attached acceptance form, to be signed by my patient advocate, is part of this medical durable power of attorney.

3. I hope to live a long, full life. However, **if my medical condition has deteriorated to the point where there remains no reasonable likelihood of my meaningful recovery, I do not want my existence prolonged.** I have the right to refuse life-sustaining medical care and treatment; I delegate that right to my patient advocate, with full awareness that I am authorizing my patient advocate to make decisions that could result in my death.

By "meaningful recovery," I mean restoration to a state of bodily health and mental awareness including, among other things, the ability to care for myself and to interact with people and with my surroundings.

4. My patient advocate's authority extends to all treatment and care modalities, whether known at the date of this document or not. Without intending any limitation, I give my patient advocate authority to hire and discharge caregivers and to admit me to or discharge me from any hospital, nursing home, hospice, or other caregiving institution, even against medical advice.

5. By way of illustration, my patient advocate may accept, refuse, continue, or withdraw any of the following in the course of my treatment and care:

- medication (my patient advocate may request medication even if medication used to relieve pain might cause addiction or have other adverse medical effects)

- diagnostic procedures

- surgery

- resuscitation ("No Code" or "Do Not Resuscitate" orders)

- food and water

6. I intend the statements in this medical durable power of attorney to be deliberate pronouncements concerning my wishes about life-sustaining treatment. My patient advocate's authority may be exercised regardless of whether I am conscious, regardless of whether I am terminally ill, and regardless of the cause of my condition. I have thoughtfully discussed with my patient advocate my wishes and my values concerning the quality of my life; if a situation arises that I have not foreseen, I am confident that my patient advocate will make the same decision I would have made under the exact circumstances that will have been presented, and I give my patient advocate the power to decide for me in those circumstances.

7. No one will be liable to me or to anyone claiming under me for complying with my patient advocate's directions to provide or withhold care or treatment under the authority of this medical durable power of attorney; this document is to be considered a full release of any such liability. Further, I release my patient advocate from any liability arising out of the exercise of powers granted by this medical durable power of attorney.

8. My patient advocate will have full access to my medical records and has my authorization to deal in every way with health care providers as fully as I could if I were acting for myself.

9. This medical durable power of attorney will not be affected by my disability, and the powers granted to my patient advocate may be exercised only when I am unable to participate in medical treatment decisions.

10. If a guardian or conservator is needed, I nominate my patient advocate as guardian and conservator.

11. A photocopy of this medical durable power of attorney may be accepted, with the same effect as the original, by any person dealing with my patient advocate.

Dated: _August 29, 2016_   /s/ _Marshall F. Fisher_
                                   **MARSHALL FRANKLIN FISHER**

The above medical durable power of attorney was signed on the last date written above by Jeffrey Bodnar, who appeared to be of sound mind and under no duress, fraud, or undue influence. We are eligible witnesses.

(The spouse, parent, child, grandchild, sibling, presumptive heir, and known devisee of the patient are ineligible as witnesses, as is the physician, the patient advocate, an employee of a life or health insurance provider, an employee of a health facility that is treating the patient, or an employee of a home for the aged.)

WITNESSES:

Jeffrey R. Thomas

STATE OF MICHIGAN )
OAKLAND COUNTY )

Subscribed and sworn to before me on September 5, 2014, personally appeared Marshall
Franklin Fisher

Notary Public, Oakland County
My commission expires August 26, 2019

CORINA A WESTOVER
Notary Public - Michigan
Oakland County
My Commission Expires Aug 26, 2019
Acting in the County of Oakland

## ACCEPTANCE OF DESIGNATION

I accept Marshall Franklin Fisher's designation of me as patient advocate. I am aware of
the following provisions of MCL 700.5507, which are required to be included in this
acceptance:

a. This designation shall not become effective unless the patient is unable to
participate in medical treatment decisions.

b. A patient advocate shall not exercise powers concerning the patient's care, custody,
and medical treatment that the patient, if the patient were able to participate in the
decision, could not have exercised on his or her own behalf.

c. This designation cannot be used to make a medical treatment decision to withhold
or withdraw treatment from a patient who is pregnant that would result in the
pregnant patient's death.

d. A patient advocate may make a decision to withhold or withdraw treatment which
would allow a patient to die only if the patient has expressed in a clear and
convincing manner that the patient advocate is authorized to make such a decision,
and that the patient acknowledges that such a decision could or would allow the
patient's death.

e. A patient advocate shall not receive compensation for the performance of his or her
authority, rights, and responsibilities, but a patient advocate may be reimbursed for

actual and necessary expenses incurred in the performance of his or her authority, rights, and responsibilities.

f. A patient advocate shall act in accordance with the standards of care applicable to fiduciaries when acting for the patient and shall act consistent with the patient's best interests. The known desires of the patient expressed or evidenced while the patient is able to participate in medical treatment decisions are presumed to be in the patient's best interests.

g. A patient may revoke his or her designation at any time and in any manner sufficient to communicate an intent to revoke.

h. A patient advocate may revoke his or her acceptance to the designation at any time and in any manner sufficient to communicate an intent to revoke.

i. A patient admitted to a health facility or agency has the rights enumerated in section 20201 of the public health code, Act No. 368 of the Public Acts of 1978, being section 333.20201 of the Michigan Compiled Laws.

Dated: _August 29, 2016_         /s/_____
                                        **MATTHEW FISHER**


## DETERMINATION OF INABILITY TO PARTICIPATE

Upon examination, we have determined that is now unable to participate in medical treatment decisions.

This determination, which will be made a part of the patient's medical record, is to be reviewed no less frequently than annually.


Dated: _____         /s/_____
                                             **[Patient's attending physician]**



# GENESEE COUNTY



**BUSINESS REGISTRATION CERTIFICATE**
CONDUCTING BUSINESS UNDER SOLE-PROPRIETOR OR CO-PARTNERSHIP

John J. Gleason

**County Clerk**

Filing #: 202210130015
10/13/2022 03:59 PM
Expires: 10/13/2027

New [X]    Renewal [ ]    Amended [ ]

THE UNDERSIGNED hereby certifies, under the provisions of P.A. No. 101, P.A. of Mich. for the year 1907, as amended, that the following person, or co-partnership, now own, carry on, conduct or transact or intends to own, carry on, conduct, or transact business or maintain an office or place of business in the County of Genesee, State of Michigan, under the name, designation or style set forth below:

1.  **NAME OF BUSINESS:** ___COURT JUDGMENTS ENFORCEMENT___

2.  **ADDRESS OF BUSINESS:** ___12263 ODELL RD, LINDEN, MI 48451___
    *(Complete Mailing Address)*

3.  **NAME OF PERSON(S)** owning, conducting, transacting or composing the above business, and the home post office address of each:

| NAME | RESIDENCE ADDRESS (Street, City, State, Zip) |
|---|---|
| (Print) ___THOMAS FRANCIS MAHER___ | ___12263 ODELL RD, LINDEN, MI 48451___ |
| (Print) | |
| (Print) | |
| (Print) | |

4.  **PARTNERSHIP CERTIFICATE.** The Undersigned hereby certifies, under the provisions of MCLA 449.101-449.106, that:
    (a) The business mentioned herein [X] Sole Proprietorship [ ] Co-Partnership

5.  **SIGNATURES OF ALL PERSONS LISTED ABOVE** *MUST BE SIGNED BEFORE A NOTARY PUBLIC*

    _Thomas F. Maher_    _____

STATE OF MICHIGAN
COUNTY OF GENESEE

PARTNERSHIP CERTIFICATE. The undersigned hereby certifies under the provisions of Michigan P.A. No. 164 of 1913, as amended, that the business named herein is a partnership.
*MUST BE SIGNED BEFORE A NOTARY PUBLIC*

I, _____, one of the co-partners of the firm _____ do certify that all co-partners of the firm individually signed their respective names affirmed before me and that the place of residence of each co-partner is correct.

Signature: _____
*(One of the Co-Partners of above named firm)*

Subscribed and sworn to before me this ___13th___ day of ___October___, ___2022___

Signature: _Kiera Patterson_

Print: Kiera Patterson
Deputy Clerk
State of Michigan, County of Genesee

STATE OF MICHIGAN
COUNTY OF GENESEE } ss.

I, John J. Gleason, Clerk of the County of Genesee and of the Circuit thereof, do hereby certify that the foregoing copy is true and exact copy of the original document on file in the office of the County Clerk.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at the city of Flint, In said County on

John J. Gleason, Genesee County Clerk

By: _Kiera Patterson_ Deputy Clerk

NOTE: This Certificate must be renewed within five (5) years from date. If you change your place of business you must notify the office. If you change the personnel listed above you must file Notice of Dissolution or file an amended Certificate with this office. 'Person' means one or more individual, partnership, trusts, fiduciaries, or other entities capable of contracting except corporations and limited partnerships.

1101 Beach Street - Flint, MI 48502 - Phone: (810) 257-3225

# ASSIGNMENT OF BANKRUPTCY DISTRIBUTION OWED TO CREDITOR

Eastern District of Michigan – United States Bankruptcy Court    **UNCLAIMED FUNDS OF $5,291.52**

**File Number:**
**Creditor & Debtor the same Individual:    Marshall Franklin Fisher      (now deceased, DOD 08.05.16)**

**UNCLAIMED FUNDS - Dollar Amount To Be Released:  Five thousand two hundred ninety one and 52/100.**

This Indenture & Assignment is made the ___12th___ day of December, 2022 between

**Matthew Fisher, son of deceased Marshall Franklin Fisher with proper Power of Attorney authority, as ASSIGNOR of these funds on behalf of his deceased father, residing at 20919 Alexander Street, St Clair Shores, MI 48081, son Matthew Fisher managed the estate assets distribution of his father Marshall Franklin Fisher (the deceased Creditor-Debtor) who died intestate on 08.05.2016    *AND*    COURT JUDGMENTS ENFORCEMENT COMPANY, (ASSIGNEE) business address:  PO Box 321, 250 E. Boulevard Drive, Flint, Michigan, 48502**

In exchange for valuable consideration and other services received , creditor heir assignor & son Matthew Fisher on behalf of deceased father Marshall Franklin Fisher, hereby transfers, assigns and conveys, without recourse, or any representation, or warranty, express or implied, unto **COURT JUDGMENTS ENFORCEMENT, located at PO Box 321, 250 E. Boulevard Drive, Flint, MI  4852** all its right, title, interest, powers, and options in, if any, for the property and/or Unclaimed Funds monies due unto him as rightful heir of Marshall Franklin Fisher held in the Eastern Michigan Bankruptcy Court.

This assigned asset cash money is a result of "unclaimed funds" recovered in bankruptcy assets to be distributed to this creditor, now the assignor-creditor, held by the Eastern Michigan Bankruptcy court, **filed on 03/24/2014 and now discharged**. For various possible causes and reasons, this asset money has not been released by the Eastern Michigan Bankruptcy court as of the date this form is signed.

**CLIENT-CREDITOR-ASSIGNOR WAS ADVISED THAT THEY MAY SEEK THE ADVICE OF AN INDEPENDENT LAWYER OF CLIENT'S CHOICE FOR OBTAINING LEGAL ADVICE BEFORE SIGNING THIS AGREEMENT.**

By: X _____     Client-Creditor-Assignor signature

By: **MATTHEW FISHER**  -    Client printed name

Date Signed by Client ✱ _December 12,_____ , 2022

The signing client's position/authority can be verified at the following phone #: _248-924-8875____ .

By: X _____Thomas F. Maher_____     Asset Recovery Specialist signature

By: **THOMAS F. MAHER**  -    Asset Recovery Specialist printed name

Date Signed by Asset Recovery Specialist: DECEMBER ____12___ , 2022

# COURT JUDGMENTS ENFORCEMENT COMPANY

**Thomas F Maher  -  Asset Recovery Specialist**
**PO Box 321**
**Flint, Michigan 48501**
**cell phone  -  810.691.4337**
**email  -  ceo.tfm@gmail.com**